## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERIC MILLER,

                    Petitioner,

      v.

THOMAS WINN,

                    Respondent.

Case No. 14-14551
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Eric Anthony Miller ("Petitioner") was convicted of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(c), first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), unlawful imprisonment, MICH. COMP. LAWS § 750.349b, and aggravated stalking, MICH. COMP. LAWS § 750.411i, following a jury trial in the Lapeer County Circuit Court. He was sentenced in 2010 to concurrent terms of 1) 18 years, 9 months to 40 years imprisonment on the

criminal sexual conduct convictions; 2) 7 years, 11 months to 20 years imprisonment on the home invasion conviction; 3) 7 years, 2 months to 15 years imprisonment on the unlawful imprisonment conviction; and 4) 2 to 5 years imprisonment on the stalking conviction.

In his *pro se* petition, Petitioner raises claims concerning the sufficiency of the evidence, the admission of certain evidence, the denial of a directed verdict motion, the denial of a resentencing motion, the scoring of the sentencing guidelines, the effectiveness of trial and appellate counsel, the conduct of the prosecutor, the jury instructions, the failure to produce a witness, and the failure of the trial judge to recuse himself. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II. Background

Petitioner's convictions arise from stalking and sexually assaulting his former girlfriend at her home in Lapeer County, Michigan in 2009. The Michigan Court of Appeals described the relevant facts as follows[1]:

---

[1] These facts are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009),

The complaining witness testified that she and defendant had had an intimate relationship, but that when she wished to end it, defendant contacted her with such persistence, both in person and by electronic means, that she came to feel harassed and threatened.

The complainant further testified that, on the night of November 2–3, 2009, when she was in her bedroom and in the early stages of sleep, defendant appeared, undressed and brandishing a knife. According to the complainant, defendant threatened her with the knife, forcibly penetrated her vagina with his penis, and then forcibly penetrated her anus with his penis. The complainant continued that defendant admonished her that they were going to get back together, that she was going to tell that to her friends and family, and that she was otherwise going to abide by his terms and conditions. Then, according to the complainant, in response to some impatience, defendant forcibly inserted a sexual aid into her vagina, and left it there for at least ten minutes while he continued his threats and demands. Before leaving, defendant told the complainant not to speak of the assault to anyone, and spoke of consequences should she fail to accede to that and his other terms and conditions.

The complainant testified that in the days immediately following, defendant was constantly initiating communications, by phone and text messaging, and repeatedly insisting that she see him, and threatening her with consequences if she crossed him.

*People v. Miller*, No. 300209, 2012 WL 2362478, *1 (Mich. Ct. App. June 21, 2012)(unpublished).

After he was sentenced, Petitioner appealed his conviction to the Michigan Court of Appeals. In that appeal Petitioner challenged the sufficiency of the evidence, the admission of certain evidence, the scoring of the sentencing guidelines, the effectiveness of trial counsel, the prosecutor's charging decision, the jury instructions, the failure to produce a witness, and the failure of the trial court to recuse itself. The court denied relief on those claims and affirmed Petitioner's convictions and sentences. *Id.* at *2-13. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Miller*, 493 Mich. 917, 823 N.W.2d 602 (2012).

Petitioner then filed a motion for relief from judgment with the state trial court raising claims about the effectiveness of his trial and appellate counsel and the prosecutor's conduct. The trial court denied his motion finding that the claims lacked merit and that Petitioner failed to establish cause and prejudice under Michigan Court Rule

6.508(D).  *People v. Miller*, No. 09-010234-FC(MH) (Lapeer Co. Cir. Ct. July 13, 2013).  Petitioner filed a delayed application for leave to appeal challenging the trial court's procedural ruling, which was also denied for lack of merit.  *People v. Miller*, No. 317613 (Mich. Ct. App. Oct. 4, 2013).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D).  *People v. Miller*, 495 Mich. 978, 843 N.W.2d 763 (2014).

Petitioner then filed this federal habeas petition in which he raises the following claims:

I.    Due Process Violation - Insufficient Evidence to Convict

II.   Due Process Violation - Improper Trial Court Rulings

III.  Due Process Sentencing Violation - Incorrect Statutory Sentencing Guidelines Calculation

IV.   Sixth Amendment Violation - Ineffective Assistance of Counsel

V.    Due Process Violation - Prosecutorial Misconduct

VI.   Due Process Violation - Incorrect Jury Instruction

VII.   Confrontation - Failure to Produce Witness

VIII.  Due Process Violation - Failure of Trial Judge to Recuse
       Himself

IX.    Due Process Violation - Insufficient Evidence to Convict

X.     Sixth Amendment Violation – Ineffective Assistance of Trial
       Counsel

XI.    Sixth Amendment and Due Process Violations – Ineffective
       Assistance of Appellate Counsel

Respondent has filed an answer to the petition contending that it

should be denied.  Petitioner has filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard

of review for federal courts considering habeas petitions brought by

prisoners challenging their state court convictions. The relevant provi-

sion states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may therefore grant the writ under § 2254(d)(1) if the state court correctly identifies the governing legal principle from Supreme Court precedent, but "unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*

*Bell*, 535 U.S. at 694.  The state court's application, however, must have been 'objectively unreasonable,' and more than just incorrect or erroneous.  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) also limits a federal court's review to whether the state court's decision comports with clearly established federal law as determined by the Supreme Court *at the time* the state court rendered its decision.  *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  Federal circuit or district court cases do not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief.  *See Parker v. Matthews*, 567 U.S. _, 132 S. Ct. 2148, 2155 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). But lower federal courts may be useful in assessing the reasonableness of a state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002). The state court decision need not cite the Supreme Court cases or reflect any awareness of those cases creating this clearly established law, "so long as neither the reasoning nor the result of the state-

court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

Finally, federal habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). And the state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); though a petitioner may rebut this presumption with clear and convincing evidence.

The result is a "highly deferential standard" for federal habeas court reviewing state court rulings. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

## IV. Analysis
### a. Sufficiency of the Evidence, Directed Verdict (Habeas Claims I, II, IX)

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support Petitioner's convictions; specifically that the prosecution failed to present DNA or biological evidence and that the victim was not a credible witness. He also argues that the trial court erred in denying his directed verdict motion. In particular, Petitioner asserts that the prosecution failed to present DNA or biological evidence

and that the victim was not a credible witness. Respondent contends that these claims lack merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is

the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, _ U.S. _, 132 S. Ct. 2, 4 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Id.* at 788-89.

Under Michigan law, first-degree criminal sexual conduct as relevant here requires proof of sexual penetration, lack of consent, and the defendant's use of dangerous weapon. MICH. COMP. LAWS § 750.520b(1)(e). The elements of first-degree home invasion are: (1) that the defendant either broke and entered a dwelling or entered a dwelling without permission, (2) that defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time when entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and (3) while the defendant was entering, present in, or exiting the dwelling either the defendant was armed with a dangerous weapon or another person was lawfully present in the dwelling. *People v. Wilder*, 485 Mich. 35, 43, 780 N.W.2d 265 (2010); MICH. COMP. LAWS §

750.110a(2). Unlawful imprisonment requires proof that the defendant knowingly restrains another person under any of the following circumstances: (a) The person was restrained by means of a weapon or dangerous instrument; (b) the restrained person was secretly confined, or (c) the person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony. *See United States v. Anderson*, 608 F. App'x 369, 373 (6th Cir. 2015) (citing statute); MICH. COMP. LAWS § 750.349b. Aggravated stalking "consists of the crime of 'stalking,' ... and the presence of an aggravating circumstance ...." *People v. Threatt*, 254 Mich. App. 504, 505, 657 N.W.2d 819 (2002). Stalking is a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MICH. COMP. LAWS §§ 750.411h(1)(d), 750.411i(1)(e); *see also People v. Kieronski*, 214 Mich. App. 222, 229, 233–234, 542 N.W.2d 339 (1995). One of the aggravating circumstances is that the "course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim." MICH. COMP. LAWS §§ 750.411i(2)(c).

The prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim. The court explained:

> In deciding a challenge to the sufficiency of the evidence, our task is to review de novo the evidence in the light most favorable to the prosecution to determine whether it was sufficient to persuade a reasonable trier of fact beyond a reasonable doubt that each element of each crime was proved. *See People v. Herndon*, 246 Mich. App. 371, 415, 633 N.W.2d 376 (2001).
>
> Defendant, in his Standard 4 brief, argues that the charges of CSC I and unlawful imprisonment could not be proved, "[d]ue to not only the lack of either DNA or biological evidence, but the testimony and the statements of the alleged victim stating that the offenses occurred only after the defendant had allegedly

broken into her home." But defendant offers no legal, or logical, foundation for the premise that it is impossible to commit CSC I or unlawful imprisonment after having broken into the victim's home.

Appellate counsel and defendant both insist that the complainant was not a credible witness, and otherwise ask this Court to interpret the evidence to indicate a consensual relationship. Defendant, in his Standard 4 brief, states that inconsistencies in testimony arising from the preliminary examination and trial leaves the witness "discredited therefor [sic] making any testimony or statement void." But defendant cites no authority for the proposition that a witness who has not been entirely consistent is thereby rendered wholly incompetent. In fact, inconsistencies in testimony do not disqualify the witness, but instead create a credibility issue for jury determination. *See People v. Jackson*, 292 Mich. App. 583, 590, 808 N.W.2d 541 (2011).

Likewise, appellate counsel's theories concerning how the complainant's conduct might be inconsistent with that of a person forcibly raped, how the incident could be considered an extension of her and defendant's sexual history, including role playing and feints at violence, and complainant's incentive to accuse defendant falsely are but invitations to reevaluate the evidence de novo and reach a conclusion different from the jury's. But it is not this Court's purpose to entertain plausible alternative interpretations of the evidence presented; rather, at issue is whether the prosecution presented sufficient evidence to persuade a reasonable jury that defendant's conduct satisfied the elements of the crimes with which he was charged.

"It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People*

> v. *Lemmon*, 456 Mich. 625, 637, 576 N.W.2d 129
> (1998). Accordingly, "it is well settled that this Court
> may not attempt to resolve credibility questions
> anew." *People v. Gadomski*, 232 Mich. App. 24, 28,
> 592 N.W.2d 75 (1998). Further, the accounts of a sin-
> gle eyewitness can suffice to persuade a jury of a de-
> fendant's guilt beyond a reasonable doubt. *See People
> v. Newby*, 66 Mich. App. 400, 405, 239 N.W.2d 387
> (1976). For these reasons, we decline appellate coun-
> sel's and defendant's invitations to stray from these
> principles and reassess credibility, or entertain alter-
> native interpretations of the evidence.
>
> The complainant's unequivocal account explaining
> that defendant confronted her on several occasions
> prior to appearing at her home, uninvited, trapping
> and sexually assaulting her and, then, contacted her
> several times and used threatening language was suf-
> ficient to support the verdict in connection with all six
> charges. *See Gadomski*, 232 Mich. App. at 28, 592
> N.W.2d 75; *Newby*, 66 Mich. App. at 405, 239 N.W.2d
> 387.

*Miller*, 2012 WL 2362478 at *1-2.

The state court's decision is neither contrary to Supreme

Court precedent nor an unreasonable application of federal law or

the facts. The evidence presented at trial, viewed in a light favor-

able to the prosecution, established that Petitioner committed the

crimes. The victim testified that Petitioner entered her home

without permission, confined her against her will, threatened her,

and sexually assaulted her with at least three acts of penetration

(penis-vagina, penis-anus, object-vagina) while armed with a

knife. He then continued to make harassing and threatening phone calls and send text messages to her after the incident occurred. Such testimony, if believed, was sufficient to support Petitioner's convictions for three counts of first-degree criminal sexual conduct, first-degree home invasion, unlawful imprisonment, and aggravated stalking. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658–59 (6th Cir. 2008) (citing cases).

Petitioner challenges the credibility of the victim and the jury's evaluation of the evidence presented at trial. However, it is the province of the jury, as fact-finder at trial, not that of a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Given this determination, Petitioner also cannot establish that the trial court erred in denying the directed verdict motion. Habeas relief is not warranted on these claims.

### b. Admission of Evidence (Habeas Claim II)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting as evidence knives and

photographs of knives that Petitioner owned but were not alleged to have been used in the crime.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). An error in state procedure or evidentiary law does not rise to the level of federal constitutional claims warranting habeas relief, "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim, stating in part:

> This issue first arose when a police detective identified several images of knives discovered while executing a search warrant at defendant's residence. The officer described an image depicting "a large black knife in a sheath, a multipurpose tool or a Leatherman tool with sheath, a smaller silver folding pocketknife and a blue

utility knife, a folding utility knife." Defense counsel objected to admission of the image on the ground that "if there's something on this page that's relevant to this case then the actual item is the best evidence and anything on this page that's not relevant would be prejudicial to my client." The trial court overruled the objection on the ground that the image "has to go to the weight of the evidence."

The prosecuting attorney later offered into evidence a folding utility knife seized from defendant, to which defense counsel objected on the ground that an image of that item was already in evidence. The trial court agreed that the new offering was redundant, but admitted it. And a box cutter that the complainant testified belonged to defendant was admitted into evidence. She testified that she had seen it before, and that defendant routinely carried box cutters with him, but added that she was not aware of his being in possession of that particular knife on the night in question. The complainant testified that she was "terrified" about receiving threatening calls after the incident from defendant whom she knew carried box cutters on his person. Defense counsel did not renew any objections.

Appellate counsel argues that evidence of defendant's knives, other than those he allegedly possessed or produced on the night at issue, was irrelevant and unfairly prejudicial. We disagree in part with the first contention, and in total with the second.

The prosecuting attorney and his witnesses nowhere implied that any of the other knives found in defendant's possession, including the large black one in its sheath, played any role in the sexual assault. Further, the knives in question included no dagger, switchblade, or other sort of distinctly violent (or defensive) character, but instead

were knives of the sort any household might have—folding pocket knife, utility knives, and box cutters. Thus, even if the knives were of doubtful relevance, they nonetheless had very little potential to cause unfair prejudice. Assuming without deciding that admission of the evidence that defendant possessed those knives was error, any such error was harmless. *See People v. Lukity*, 460 Mich. 484, 495, 596 N.W.2d 607 (1999) (a defendant pressing a preserved claim of nonconstitutional error bears the burden of showing that it is more probable than not that the error affected the outcome).

However, that defendant regularly went about with a box cutter on his person was in fact relevant—if not to the other charges, then to that of aggravated stalking. Indeed, the complainant testified that knowing that defendant was routinely in possession of such a knife heightened her fears of confronting him.

For these reasons, appellate counsel fails to show that the trial court's evidentiary decisions concerning defendant's knives denied him a fair trial.

*Miller*, 2012 WL 2362478 at *3-4.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d

19

326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, with regard to federal law, the admission of the evidence did not render Petitioner's trial fundamentally unfair. The knife found at the victim's residence was relevant to the charges. The other knife and box cutter evidence was somewhat relevant to the charges and the victim's fear of Petitioner. Moreover, even if the trial court erred in admitting it, any such error was harmless. because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-118 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (same). In this case, the victim's testimony provided significant evidence of Petitioner's guilt and the admission of regular household knives and box cutters did not have a substantial or injurious effect on the verdict. Habeas relief is not warranted on this claim.

### c. Sentencing (Habeas Claims II, III)

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in scoring several Offense Variables of

the Michigan sentencing guidelines, relied upon inaccurate information, relied upon unproven facts, and erred in denying his motion to correct an invalid sentence. His habeas petition states these arguments as conclusory allegations; he does not specify what inaccurate information or unproven facts he believes the court relied upon. Before the Michigan Court of Appeals Petitioner argued that his first-degree criminal sexual conduct and unlawful imprisonment charges could not be proven solely through the victim's testimony and without DNA or other biological evidence. *People v. Miller*, No. 300209, 2012 WL 2362478, at *2 (Mich. Ct. App. June 21, 2012)(unpublished). Petitioner also asserts in habeas petition that Offense Variable 19 is unconstitutionally vague.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums. *See* MICH. COMP. LAWS §§ 750.520b(1)(e), 750.110a(2), 750.349b, 750.411i. Consequently,

those sentences are insulated from habeas review absent a federal constitutional violation.

The Michigan Court of Appeals denied relief on Petitioner's sentencing claims finding that the Offense Variables were properly scored, that the Michigan sentencing scheme was unaffected by *Blakely* and its progeny, and that Offense Variable 19 is not unconstitutionally vague, particularly as applied to the case at hand. *Miller*, 2012 WL 2362478 at *4-9.

Petitioner's claim that the trial court erred in scoring various offense variables of the Michigan sentencing guidelines is also not cognizable on habeas review because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *accord Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Alleged errors in scoring the offense variables and determining the sentencing guideline range do not therefore warrant federal habeas relief.

Moreover, to the extent that Petitioner contests the state court's interpretation of state law regarding the offense variables and the application of that law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328. Petitioner thus fails to state a claim upon which relief may be granted as to this issue.

Petitioner also argues that his sentences violate federal due process. A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81

(E.D. Mich. 1992).  But the record reveals Petitioner had a sentencing hearing before the state trial court with an opportunity to challenge the scoring of the guidelines.  Petitioner also presented his sentencing issues to the state appellate courts and was denied relief.  Petitioner fails to establish that the trial court relied upon materially false or inaccurate information in imposing his sentences which he had no opportunity to correct.  No due process violation occurred.

Petitioner's claim that the state trial court erred in relying upon facts neither proven by the prosecution nor admitted by him in imposing his sentence also fails.  His argument before the state court, which he does not flesh out in his habeas petition, is that the victim was not a credible witness based on inconsistencies in her testimony, which "make[e] any testimony or statement void" and that she could therefore not establish the sexual relationship was non-consensual as a fact. *Miller*, 2012 WL 2362478, at *2. Claims such as these arise from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, _ U.S. _, 133 S. Ct. 2151 (2013).  In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U .S. at 490.  In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303.  In *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt.  *Alleyne*, 133 S. Ct. at 2158 (Thomas J., plurality opinion).

These cases, however, are inapplicable to the case at hand. Petitioner was sentenced to indeterminate sentences within the statutory limits for his convictions and those sentences do not include mandatory minimums.  The Supreme Court's holding in *Alleyne* dealt with judge-found facts which raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range, *see United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014), which is what occurred in Petitioner's case.  Unlike the laws at issue in *Apprendi* and *Alleyne*, the Michigan Sentencing Guidelines neither require nor allow a judge to impose a more severe sentence than was previously available.  Rather, they merely guide a judge in exercising his or her

sentencing discretion.  *Id.*; *see also United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014) (collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences"); *Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.' ... It said nothing about guidelines sentencing factors[.]"). The Sixth Circuit, in fact, has ruled that *Alleyne* did not decide whether judicial fact-finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment.  *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  Additionally, *Alleyne* was decided in 2013 after Petitioner's convictions became final in 2012.  *Alleyne* has not been made retroactive to cases on collateral review.  *See In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014).  As such, it does not afford Petitioner relief.[2]

[2] The Michigan Supreme Court did rely on *Alleyne* decision in finding Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial. *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015).  But *Lockridge* does not help Petitioner's federal habeas claims because it was a *state* supreme court decision, and federal habeas relief is only appropriate where the state court's decision in Petitioner's underlying case was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the *Supreme Court of the United States'* or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State

Lastly, Petitioner's void for vagueness challenge to Offense Variable 19 also does not warrant habeas relief. The Sixth Circuit has ruled that because "there is no constitutional right to sentencing guidelines, the limitations placed on judges' discretion by [sentencing guidelines] do not violate a defendant's right to due process by reason of vagueness." *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996); *accord United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999); *United States v. Wivell*, 893 F.2d 156, 159 (8th Cir. 1990). Moreover, as discussed by the Michigan Court of Appeals, Offense Variable 19 is not vague, particularly as applied to Petitioner's case. *Miller*, 2012 WL 2362478, at *8. Under MCL § 777.49(b) Offense Variable 19 is assessed when "[t]he

---

court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012)(quoting 28 U.S.C. § 2254(d))(emphasis added). Additionally, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Id.* (citing *Williams*, 529 U.S. at 380). Not only is *Lockridge* a decision of the Michigan Supreme Court, Petitioner's convictions became final in 2012 and *Lockridge,* was not decided until 2015. Finally, other courts in this jurisdiction have found "*Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 16-CV-206, 2016 WL 1068744, *5 (W.D. Mich. March 18, 2016); *see also Cummings v. Campbell*, No. 17-CV-10523, 2017 WL 957688, *3 (E.D. Mich. March 13, 2017) (Cleland, J.) (denying habeas relief on *Alleyne* claim challenging scoring of sentencing guidelines); *Perez v. Rivard*, No. 14-CV-12326, 2015 WL 3620426, *12 (E.D. Mich. June 9, 2015) (Battani, J.) (same).

offender used force or the threat of force against another person . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice." *Id.* (quoting MCL § 777.49(b)). Petitioner argued before the Court of Appeals that this did not "give reasonable notice of what conduct is subject to this additional penalty," but the Court of Appeals disagreed, finding that as applied to the conduct at issue—threatening the victim repeatedly during the assault, and then continuing to text and call with similar threats in the following days—Petitioner's conduct unambiguously fell within the language of MCL § 777.49(b) and the Michigan Court of Appeal's subsequent interpretation of that language on similar facts, in *People v. Endres. Miller*, 2012 WL 2362478, at *9 (citing *People v. Endres*, 711 N.W. 398, 402-403 (Mich. Ct. App. 2006).Petitioner has made no specific argument in his habeas petition why this finding by the Michigan Court of Appeals was contrary to or an unreasonable application of clearly established law. Thus habeas relief is not warranted on these claims.

### d. Ineffective Assistance of Trial Counsel (Habeas Claims IV, X)

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective by: (1) failing to object to the admission of the knife evidence on relevancy grounds; (2) failing to

object to the trial court's instruction on the jury review of testimony; (3) failing to object to the prosecutor's conduct in arguing for a religious duty to convict; (4) failing to object to evidence obtained in violation of the Fourth Amendment; and (5) failing to challenge the prosecution's medical and fingerprint evidence and/or conduct an independent investigation. Respondent contends that all but the first of these claims are barred by procedural default and that all of the claims lack merit.

It is well-settled that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")). In this case, the procedural default issue is complicated and the substantive issues are easier to resolve such that the interests of judicial economy are best served by addressing the merits of the claims.

To demonstrate ineffective assistance of counsel a petitioner must prove that counsel's performance was deficient and that his deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing that

counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To establish his counsel's deficient performance, Petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential and there is a strong presumption that trial counsel rendered adequate assistance. *Id.* at 689-90.

To establish that his counsel's deficient performance prejudiced him Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *Harrington*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Regarding his counsel's deficient performance and the resulting prejudice to him, Petitioner first asserts that trial counsel failed to properly object to the knife evidence. The Michigan Court of Appeals denied relief on this claim finding that counsel did object on relevancy grounds and that Petitioner failed to establish that he was prejudiced by counsel's conduct because, even if the evidence was improperly admitted, it did not prejudice Petitioner. *Miller*, 2012 WL 2362478 at *10. The record reveals that trial counsel objected to the admission of the knives/photographs of knives, particularly those not alleged to have been used in the crime, on relevancy grounds, and later objected to some of that evidence on redundancy/inflame the jury grounds, but was overruled. *See* 6/23/10 Trial Tr., pp. 54, 79-80. Petitioner's claim that counsel erred by failing to object to this evidence is thus belied by the record. Moreover, Petitioner cannot establish that he was

prejudiced by counsel's conduct given that the admission of any knives not used in the crime was harmless error. *See* discussion *supra*. Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to object to the court's jury instructions which denied the jury's request for transcripts to review trial testimony and told them instead to rely on their collective memories. The state trial court denied relief on procedural grounds and also ruled that this ineffective assistance of counsel claim lacked merit because Petitioner failed to demonstrate that counsel's performance "fell below an objective standard of reasonableness" or "so prejudiced [him] as to deprive him of a fair trial." *Miller*, No. 099-010234-FC(MH) at *3. The Michigan Court of Appeals denied leave to appeal for lack of merit and the Michigan Supreme Court denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

The trial court's instruction was proper under the Michigan Court Rules in effect at the time, *see* Mich. Ct. R. 6.414(J) (giving court discretion to order jury to deliberate further without the requested review as long as the possibility of having the testimony reviewed later is not foreclosed) (similar provision now at Mich. Ct. R. 2.513(P)). Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014); *United States v. Steverson*, 230 F.3d

32

221, 225 (6th Cir. 2000). Additionally, counsel may have reasonably decided not to object because he believed the jury's collective memory of the testimony, or lack thereof, would be more favorable to the defense than reviewing the actual transcripts. Finally, there is also no indication in the record that Petitioner was prejudiced by the lack of transcript review. Petitioner thus fails to establish that counsel was ineffective under the *Strickland* standard.

Petitioner next asserts that trial counsel was ineffective for failing to object to the prosecutor's conduct in allegedly arguing for a religious duty to convict. The state trial court denied relief on procedural grounds and ruled that the claim lacked merit because Petitioner failed to demonstrate that counsel's performance "fell below an objective standard of reasonableness" or "so prejudiced [him] as to deprive him of a fair trial." The court further explained that the prosecutor's comments, which were based on police photographs from Petitioner's residence, did not "so infect[] the trial as to render it fundamentally unfair." *Miller*, No. 099-010234-FC(MH) at *3-4. The Michigan Court of Appeals denied leave to appeal for lack of merit and the Michigan Supreme Court denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

Considered in context, the prosecutor's references to the Bibles depicted in the photographs do not seem to be intended to inspire the jury to convict based upon religious duty, but rather to

highlight the hypocrisy of reading Bibles and committing a violent crime. Counsel may have reasonably determined that an objection would run the risk of drawing attention to the remarks or that an objection was unwarranted. Even assuming that the prosecutor's comment was improper and warranted an objection, Petitioner cannot establish that he was prejudiced because the prosecutor's comment was brief, isolated, and not misleading as to the evidence or the facts of the case. The trial court also instructed the jurors that they must decide the case based upon the evidence and that the attorneys' remarks were not evidence, *see* 6/25/10 Trial Tr., pp. 98-99, and jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Petitioner thus fails to establish that counsel was ineffective under the *Strickland* standard.

Petitioner also asserts that trial counsel was ineffective for failing to object to improperly obtained evidence. Petitioner claims that the evidence was obtained improperly after police instructed the victim and her friend to search for it. Again, the state trial court denied relief on procedural grounds finding Petitioner failed to demonstrate that counsel's performance "fell below an objective standard of reasonableness" or "so prejudiced [him] as to deprive him of a fair trial." *Miller*, No. 099-010234-FC(MH) at *3. The Michigan Court of Appeals denied leave to appeal for lack

of merit and the Michigan Supreme Court denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

This is not a case of the police instructing private citizens to conduct searches that would violate the Fourth Amendment if conducted by police, which would be improper. Rather, the record reflects that the police encouraged the victim (and her friend) to search *the victim's own* residence and vehicle for evidence, *i.e.* the knife used in the crime; they were not asked to search not Petitioner's residence, vehicle, or any place where he might have a reasonable expectation of privacy. *See* 6/24/10 Trial Tr., pp. 288-90. Petitioner's Fourth Amendment rights were thus not implicated and counsel's failure to object on such grounds was not ineffective. As noted, counsel cannot be deemed deficient for failing to make a futile or meritless objection. Petitioner thus fails to establish that counsel was ineffective under the *Strickland* standard.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to request a continuance until DNA testing was completed, for failing to challenge the prosecution's medical and fingerprint experts and evidence, and/or for failing to conduct an independent investigation. The state trial court denied relief on procedural grounds finding that Petitioner failed to demonstrate that

counsel's performance "fell below an objective standard of reasonableness" or "so prejudiced [him] as to deprive him of a fair trial." *Miller*, No. 099-010234-FC(MH) at *3. The Michigan Court of Appeals denied leave to appeal for lack of merit and the Michigan Supreme Court denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

Defense counsel's duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. In this case, the record reveals that trial counsel conducted a reasonable investigation into Petitioner's case and determined that further investigation was unnecessary. As to the DNA testing, counsel may have reasonably decided not to seek a continuance to await the DNA test results because a positive result would have been detrimental to the defense while a negative result would have been of marginal benefit. Counsel may have thus determined that it was best to not seek a continuance and be able to argue that the prosecution did not have DNA evidence. As to counsel's decision not to pursue further investigation regarding fingerprint evidence, the police testimony indicated that experts were not able to obtain a usable print from a knife found at the scene. Such inconclusive evidence was favorable to the defense because it did not connect Petitioner to the knife used during the assault, or to the victim's

house where the assault took place. Counsel therefore may have reasonably decided that further investigation was unnecessary. Moreover, even if prints from the victim and/or her friend were found on the knife, it would not have exonerated Petitioner, particularly given that the victim lived in the house and her friend found the knife. Petitioner fails to show that trial counsel erred in this regard

Petitioner also fails to show that he was prejudiced by trial counsel's conduct. Counsel was able to argue that there was no DNA evidence, no evidence of trauma, and no fingerprint evidence to support the prosecution's case based upon the existing investigation, as well as the evidence and testimony presented at trial. Petitioner fails to allege how further investigation would have benefitted the defense or affected the outcome at trial. Conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Habeas relief is thus not warranted on these claims.

### e. Prosecutorial Misconduct (Habeas Claim V)

Petitioner claims he is entitled to habeas relief because the prosecutor engaged in misconduct by dividing a single major offense into an unreasonable number of related components to obtain multiple convictions. To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard). A prosecutor has significant discretion in determining what charge to file against an accused provided that probable cause exists, but may not undertake a prosecution based upon a vindictive motive, race, religion, or other arbitrary classification. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Davis*, 15 F.3d 526, 529 (6th Cir. 1994); *Oyler v. Boles*, 368 US. 448, 456 (1962)(no bad faith motive permitted).

The Michigan Court of Appeals denied relief finding that the prosecution's charging decision was supported by the record and the victim's testimony. The court explained in relevant part:

[S]ingle criminal transactions giving rise to several charges, convictions, and sentences is so common-place that no citation is required. What constitutional double jeopardy principles forbid is a second prosecution for the same offense after acquittal or conviction, and multiple punishments for the same offense. *People v. Nutt*, 469 Mich. 565, 574, 677 N.W.2d 1 (2004), citing U.S. Const, Am V; Const 1963, art 1, § 15.

Defendant's suggestion that a person convicted of CSC I may not also be charged and convicted of a home invasion or unlawful imprisonment committed contemporaneously is without legal support. Likewise the suggestion that, having achieved an initial penetration in an act of CSC I, the perpetrator is insulated from additional charges resulting from any additional penetrations is without merit. And equally without merit is the suggestion that a person convicted of CSC I is insulated from separate prosecution for stalking the victim in the days before and after that crime.

The complainant testified that defendant penetrated her vagina with his penis, then penetrated her anus with his penis, then penetrated her vagina with a sexual aid, all while armed and threatening her with a knife. The trial court instructed the jury on these three theories of CSC I. Those three distinct penetrations justified the three distinct charges, convictions, and (concurrent) sentences.

The complainant likewise testified that defendant entered her house without permission, assaulted her, while armed with a knife, and while her children were in the house. That criminal conduct was substantially distinct from the sex crimes for which defendant was also prosecuted. And the evidence that defendant restrained his victim while assaulting her, without consent or other lawful authority, and while

armed with a weapon also demonstrated criminal conduct substantially distinct from the sex crimes. Further, the complainant's account of extensive unconsented contacts from defendant, before and after the assault—which included demands and threats— also described criminal conduct substantially distinct from the sex crimes.

Because the conduct for which defendant was convicted comprised the six separate offenses for which defendant was charged, convicted, and sentenced, defendant's argument that there should have been only a single charge is without merit.

*Miller*, 2012 WL 2362478 at *10-11.

The prosecutor had probable cause to believe that Petitioner was guilty of the charged offenses based upon the victim's description of the incident. To be sure, as the Michigan Court of Appeals and this Court have found, there was sufficient evidence to support his convictions on those charged offenses. There is also no indication in the record that the prosecutor's charging decision was vindictive or based upon any impermissible factors. Petitioner fails to establish that the prosecutor abused his discretion or violated constitutional principles by charging Petitioner with multiple offense arising from one criminal incident, and habeas relief is not warranted on this claim.

### f. Jury Instructions (Habeas Claim VI)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred by failing to instruct the jury on the defense of consent.  In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show they rendered the entire trial fundamentally unfair.  *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly.  *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  Nonetheless a failure to give an instruction that is supported by the evidence does not automatically justify habeas relief unless it rendered the trial fundamentally unfair.  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at 155.  State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals denied relief on this claim finding that the trial court instructed the jury on the defense of consent while giving instructions on the first-degree criminal sexual conduct charges.  *Miller*, 2012 WL 2362478 at *12.  Peti-

tioner's claim of error is belied by the record. The trial court instructed the jury on the defense of consent. *See* 6/25/10 Trial Tr., pp. 106-07. Petitioner fails to establish that the trial court erred or that the jury instructions rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### g. Failure to Produce a Witness (Habeas Claim VII)

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to produce a known res gestae witness. Respondent contends that this claim is not cognizable because it was framed as a state law issue in the state courts and that it is abandoned and waived because Petitioner never identified the witness who should have been called.

Under the Confrontation Clause the prosecution must make a good faith effort to produce relevant witnesses at trial. *Barber v. Page*, 390 U.S. 719, 724-25 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1990), *overruled on other grounds, Crawford v. Washington*, 541 U.S. 36 (2004). The failure to produce a relevant witness only serves as a basis for habeas relief if the petitioner is denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call *res gestae* witness

did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

The Michigan Court of Appeals denied relief on this claim finding that the prosecution was only obligated to provide notice of known witnesses and reasonable assistance in locating them upon request. Here, the alleged missing witness was "the physician who examined and treated the complainant at the hospital," but Petitioner failed to "explain what benefit he might have derived" from having the witness appear at trial and failed "to show that he suffered any prejudice for want of any witness who was not present at trial." *Miller*, 2012 WL 2362478 at *12.

The prosecution was not required to call any treating physician as a matter of federal law and Petitioner fails to allege any facts which show that such testimony would have benefitted his defense. As discussed *supra*, conclusory allegations, without evidentiary support, do not provide a basis for federal habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771. Petitioner fails to establish that the failure to produce any witness deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

### h. Judicial Bias/Recusal (Habeas Claim VII)

Petitioner also asserts that he is entitled to habeas relief because the trial judge erred in failing to recuse himself due to bias.

Petitioner alleges that during his trial the trial judge was also presiding over a civil case involving Petitioner's ex-wife.

Judicial misconduct rising to the level of a Due Process Claus violation involves two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).

Adverse rulings themselves are not sufficient to establish bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (same). A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment." *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court should presume that the trial judge properly

discharged his or her official duties. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

The Michigan Court of Appeals denied relief on this claim, essentially finding that it was conclusory and speculative. The court explained in part:

> But defendant leaves this Court to guess what the nature of that other litigation was, as well as how apparent it might have been to the judge involved that a party in that other case was formerly married to defendant. And defendant neither cites authority for the proposition that a judge is disqualified from presiding over a criminal matter for having earlier, or simultaneously, presided over a civil matter involving a party of some familial relationship to the criminal defendant, nor offers record citations to show where his trial judge in fact revealed some bias against him in this case, for that or any other reason.

*Miller*, 2012 WL 2362478 at *12.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to provide a sufficient factual basis for this claim. He fails to offer any details about his ex-wife's case, or explain what type of bias it created for the trial judge in his case; he has not even established the trial judge was *aware* of the relationship between the parties in his two, un-related cases. Petitioner's conclusory allegations are insufficient to state a claim of judicial bias. Habeas relief is not warranted on this claim.

### i. Ineffective Assistance of Appellate Counsel (Habeas Claim XI)

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for erroneously arguing that trial counsel failed to object to the knife evidence while failing to raise the ineffective assistance of trial counsel claims presented in his motion for relief from judgment on direct appeal. Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). The presumption of effective assistance of appellate counsel is typically only overcome when "ignored issues are clearly stronger than those presented." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). In other words, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner": an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

On collateral review, the trial court denied relief on this claim citing the *Strickland* standard and concluding that Petitioner failed to establish that either trial or appellate counsel were ineffective. *Miller*, No. 09-010234-FC(MH) at *2-4. The Michigan appellate courts denied leave to appeal.

Petitioner fails to show that any erroneous argument about trial counsel's conduct prejudiced his appeal. More importantly,

he fails to show that by omitting the ineffective assistance of counsel claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including an insufficient evidence claim, an evidentiary claim, multiple sentencing claims, and an ineffective assistance of counsel claim. None of the other claims subsequently raised by the petitioner are "dead-bang winners" as evidenced by the state trial court's ruling that the claims lacked merit. Moreover, even if appellate counsel erred in some fashion, the petitioner cannot show that he was prejudiced by counsel's conduct given that the underlying claims lack merit. *See* discussion *supra*. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES with prejudice** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a consti-

tutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**SO ORDERED.**

Dated: March 29, 2018   s/Terrence G. Berg
                         TERRENCE G. BERG
                         UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on March 29, 2018.

s/A. Chubb
Case Manager